Allie Lou LESTER, Appellee,
Cross-Appellant,

v.

Granville Charles SPARKS, Clifford Henry Jackson, Armilla Jackson, and National Pioneer Insurance Company, a corporation, Appellants and Cross-Appellees.

No. 49012.

Supreme Court of Oklahoma.

May 9, 1978.

Rehearing Denied Sept. 29, 1978.

Alan Agee, Garvin & Agee, Pauls Valley, for appellee, cross-appellant Allie Lou Lester.

W. A. McWilliams, Oklahoma City, for appellants and cross-appellees.

DOOLIN, Justice:

We granted certiorari in this matter on February 6, 1978. Upon application of both parties under Rule 3.13A(4),[1] we will review the actions of the District Court of Garvin County and Division I of the Court of Appeals.

The matter arises from an automobile accident occurring in Pauls Valley, Garvin

1. 12 O.S.1971 Ch. 15, App. 2.

County, Oklahoma, on December 5, 1972. Plaintiff's car was struck from the rear by an automobile owned by the defendants Jackson and driven by the son of Mrs. Jackson, step-son of Mr. Jackson, one Granville Sparks. Plaintiff's automobile was legally parked at the curb and was totaled as a result of the accident.

Two actions arising out of the accident were filed. The first against the Jacksons and their son, Granville Sparks, which resulted in judgment against Sparks only, in favor of the plaintiff, Lester, in the amount of $2,865.95 actual damages and $3,000.00 exemplary damages.

The second suit, the instant case, was filed after garnishment proceedings had been commenced against National Pioneer Insurance Company (National), insurer of the Jackson car in aid of execution. The exact status of the garnishment proceedings is controverted but we find that fact not important to the conclusion and decision rendered herein. Dates likewise are not important since no question of limitations, kindred or similar matters are argued. In the case at bar, plaintiff alleged the judgment in her favor against the son, and prayed for judgment in the total amount of $5,865.94 together with exemplary damages of $100,000.00. She named Granville Sparks, judgment debtor in the first action as a member of the Jackson household, the Jacksons as owner of the vehicle, George Brown, General Adjustment Bureau, Inc. (GAB) and the insurer of the Jackson car, National as defendants. Brown, GAB and National were named under an allegation that Brown, as an employee of GAB, had acted as National's investigator and that the doctrine of respondeat superior rendered National answerable for Brown's acts.

Specifically plaintiff alleged fraud on the part of Brown, his employer and National claiming Brown, with the intent to deceive and defraud the plaintiff, had the Jacksons report the Jackson vehicle stolen. This would render insurance coverage under the Jackson policy with National null and void under the policy exclusions of permissive use, the definition of the insured. The allegations as to Brown and thus GAB and National, co-defendants, included allegations that Brown exerted undue influence and pressure upon the Jacksons to make knowingly false statements and reports as to the theft of the vehicle.

The trial court dismissed as to the defendants' son, Sparks; no appeal was taken from such action.

Answers were filed by the remaining defendants, trial ensued; and at the conclusion of the evidence and before the matter was submitted to the jury the trial court sustained the demurrer of GAB and Brown, dismissing them. The trial court also sustained National and the Jackson's demurrers as to exemplary damages but submitted the case to the jury on allegations of fraud as to the Jacksons and National. The court stated its reason for overruling the demurrer of the defendants Jackson and National on the grounds that plaintiff believed National had waived its policy defenses by paying the *Jackson's* claim for *their* automobile damages.

The jury returned judgment against the Jacksons and National in sum of $5,865.74 plus interest. Jackson and National appealed. No appeal was taken from the dismissal of GAB and Brown.

An exhibit properly admitted by the trial court was the insurance policy issued on the Jackson's car. It appears in the customary form and outlines premiums to be paid for the coverages provided and exclusions from the policy. Coverage was provided for bodily injury, property damages, comprehensive matters and collision. The insuring agreements were defined, including the definition of insured,[2] exclusions were noted

2. Definition of Insured. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word "insured" includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either.

and an "OKLAHOMA HARD TO PLACE AUTO INDORSEMENT" was attached stating, among other things, that coverage would not apply: "While automobile is being operated by (1) any person not possessing a valid driver's license . . .". Coverage under the comprehensive portion of the contract included National's responsibility for loss due to theft.

The evidence developed the investigation of claims was conducted by the defendant, Brown, GAB employee. Brown testified that on or about December 13, 1972, he received through the mail a signed loss report from National and a letter of transmittal which stated: "insured car was parked in the driveway. In the early afternoon, Granville Sparks stole the insured car and ran into the rear of plaintiff's car . .". The information furnished GAB at this point was from National who had received the report of the defendant, Mrs. Jackson, through its agent or by direct call from Mrs. Jackson.

As a result of the loss report, Brown investigated the claims of the defendants Jackson and plaintiff Lester. He took a statement from Mrs. Jackson dated December 15, 1972, wherein she stated, among other things, that "Granville Sparks had stolen the keys from my purse and then had stolen my car." He interviewed witnesses including the plaintiff, defendant Mr. Jackson, Granville Sparks and others, went to the Police Department of Pauls Valley for a stolen vehicle report, obtained estimates as to damage and reported back to the claims manager of National. Brown found out that Granville Sparks had no valid driver's license, for he was cited by the police for driving without a license at the time of the accident and this information was forwarded to National. Later, upon instructions of the claims manager of National, Brown took another statement from Mrs. Jackson dated January 15, 1973; this statement omitted any reference to the "stolen car" but did state, "I did not know that he (Granville Sparks) had the car." (Parenthetical name supplied).

Brown and GAB made final report to National and as a result National paid the Jacksons under the *theft* or *comprehensive* provisions of the policy, *not* under the collision coverage; taking a written, signed proof of loss statement from Mr. Jackson. The proof of loss contains the statement, "my car was stolen by Granville Sparks." In our opinion this is the best and only reasonably competent evidence of what happened and the rationale of why National paid Jackson's loss. We do not believe the payment under these conditions constitutes a waiver of the policy defenses available to National of "permissive use" and the defense under the hard to place endorsement as to a valid driver's license. We have carefully reviewed the evidence in this respect and find no competent reasonable evidence supporting any other conclusion.

■ An insurance policy is a contract and must be given the same consideration as any other contract except that in cases of doubt the contract will be construed more strongly against the insurer.[3] The policy, its language, definitions, terms, endorsements, etc. are not the result of an ordinary bargain struck in the market place but bears the considered approval of its terms and conditions by the Insurance Commissioner of Oklahoma or the Insurance Board, as the case may be, 36 O.S.1971, §§ 3601–3638.

■ As we analyze this policy and similar standardized policies we find it contains six or more conditions, coverages or contracts[4] interwoven and dealt with. Our statutes contemplate that certain coverages are not only overlapping but are included in an

**3.** *Liverpool & London & Globe Ins. Co. v. Kearney et al,* 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460 (1900); *Prudential Insurance Co. of America v. Mosley,* 179 Okl. 451, 66 P.2d 35 (1937). See also *National Aid Life Association v. May,* 201 Okl. 450, 207 P.2d 292 (1949).

**4.** See 36 O.S.1971 §§ 703, 704, 706, 707 & 708. *Worthan v. Ohio Casualty Insurance Co.,* 535 P.2d 1025 (Okl.App.1975).

automobile policy; see 36 O.S.1971, § 701. It is not bold to say that a modern automobile insurance policy encompasses accident, property, vehicle and casualty coverages.

We hold that payment under the comprehensive (theft) coverage of a policy is not a waiver of the specific policy defenses or exclusions as to permissive use, or the requirement that the operator must have a valid license, the property and collision provisions. Logic and common sense dictate such a result for it is not the qualification or lack thereof, of the user, but the act of the theft and taking that is covered under the comprehensive portion of the insurance contract. It would be utterly foolish and defeat the intent of the insurance contract to say that the theft of an automobile was not covered under the comprehensive provisions of the policy as the thief drove without a valid license.

There is no competent evidence, reasonable in nature in the record except that Granville Sparks was driving the car at the time of the accident and that he had no drivers license.

The vice or error occurred when the trial court did not sustain the demurrer of National and held in effect that National had waived the policy defense of an unlicensed driver and permissive use by paying the claim to the Jacksons under the comprehensive provisions of the policy and was therefore subject to liability under the property damage provisions thereof.

Review of the record in this case reveals no competent evidence reasonably supporting the theory of waiver propounded by the plaintiff and court and supporting the verdict and judgment entered herein.[5] National had a duty to deal fairly with its insured [6] and at the close of its investigation to pay or deny the Jackson's claim. It

should not be faulted for paying under the theft coverage and dealing fairly with its insured under the contract, for economic or other valid reasons.

Appellant has referred us to the case of *Wasilko v. Home Mutual Casualty Company*, 210 Pa.Super. 322, 232 A.2d 60 (1967) and although dealing with a "non-ownership" defense, it is similar to the instant case. The Pennsylvania Court quotes 16A *Appleman Insurance L & P* §§ 9081, 9088 and concludes, "in order to establish a waiver the evidence must show the acts of the insurance company constituted a voluntary relinquishment of a known right . . ."

§ 9090 states at page 344:

"The doctrine of implied waiver or estoppel is not available to bring within the coverage of an insurance policy risks that are not covered by its terms [7] or that are expressly excluded therefrom . . . ." (Citing cases).

National's demurrer should have been sustained.

We turn to the remaining defendants, the Jacksons. Plaintiff's petition reduced to its simplest terms alleges the Jacksons participated in reporting the car stolen, knowing that Granville Sparks had permission to drive same and that this act was fraudulent and combined with the acts of GAB, Brown and National had deceitfully, oppressively, fraudulently and maliciously caused detriment to the plaintiff. The plaintiff further alleged because of such acts as last set out she was entitled to exemplary damages.

▪ Ordinarily when fraud is properly alleged by plaintiff and denied by the defendant, the question becomes one for the trier of facts, if there is conflicting evi-

5. *Green v. Safeway Stores, Inc.*, 541 P.2d 200 (Okl.1975); *Davis v. Town of Cashion*, 562 P.2d 854 (Okl.1977).

6. *Century Life Insurance Company, Ltd. of Edinburgh, Scotland v. Rice*, 193 Okl. 418, 144 P.2d 953 (1944).

7. For a discussion of exceptions to the theft coverage under comprehensive provisions of a policy see 7 Blashfield Auto Law 3rd Add. § 313.16. Nor is the instant case within the holding of and the fact situation of *Milburn v. Federated Mutual Implement & Hardware Insurance Company of Owatonna, Minnesota*, 349 P.2d 644 (Okl.1960).

dence.[8] The record here is replete with conflicting evidence of the Jacksons on the points of permissive use, theft of the vehicle involved and reports to the police. But, we cannot say that such acts and the proof thereof constitutes oppressive and fraudulent conduct which would entitle the plaintiff to take her case to the jury.

Nowhere can it be demonstrated nor is there any competent evidence that the conflicting evidence given by the Jacksons as to permissive use or theft was malicious, oppressive or deceitful. There is a failure and dearth of clear and convincing evidence that the Jacksons' conduct caused detriment to the plaintiff. True, the Jacksons changed their story as to the use or theft of the vehicle. The evidence also showed that Mr. Jackson went to the District Attorney, but he did not remember reporting a theft. No proof of the elements of fraud were presented and there is a total lack of clear, cogent and convincing evidence which will sustain fraud[9] and a judgment against the Jacksons.

Judgment of the trial court reversed with directions to dismiss action of plaintiff against defendants.

LAVENDER, V. C. J., and BERRY, BARNES and SIMMS, JJ., concur.

WILLIAMS, J., dissents.

8. *Johnson v. McDonald*, 170 Okl. 117, 39 P.2d 150 (1935); see also *Toles v. Green*, 544 P.2d 910 (Okl.App.1975) and *Seay v. General Elevator Co.*, 522 P.2d 1022 (Okl.1974).

9. *Armstrong v. Anderson* 417 P.2d 326 (Okl. 1966); *Steiger v. Commerce Acceptance of Oklahoma City*, 455 P.2d 81 (Okl.1969); *State ex rel. Derryberry v. Kerr-McGee*, 516 P.2d 813 (Okl.1973).