PRACTICAL PRODUCTS CORPO-
RATION, Plaintiff–Appellee,
Cross–Appellant,

v.

Paul W. BRIGHTMIRE, Defendant–
Appellant, Cross–Appellee.

No. 74884.

Supreme Court of Oklahoma.

Nov. 25, 1992.

Rehearing Denied Dec. 14, 1993.

Stipe, Gossett, Stipe, Harper & Parks, Gene Stipe, McAlester, for defendant-appellant, cross-appellee.

Jay C. Baker, Tulsa, for plaintiff-appellee, cross-appellant.

WATT, Justice:

## FACTS

On December 25, 1987, a severe ice storm knocked out electric service to the Tulsa home of defendant, Paul W. Brightmire. The electricity remained off for several days. On the morning of the 26th, defendant rented a 3200 watt portable generator to service the electrical demands of his home. When defendant discovered that the rented unit did not generate sufficient electricity for his needs, he began efforts to purchase a larger generator. Defendant telephoned several generator vendors and concluded that he needed to purchase a 5000 watt generator.

On December 28, 1987, defendant telephoned plaintiff, Practical Products Corporation, and spoke with its vice-president, Gary Dundee, regarding the availability of a 5000 watt portable generator. Although plaintiff did not have any generators in stock, Dundee stated that he could obtain one from its distributor, Brown Engine and Equipment in Oklahoma City. Defendant testified that he and Dundee specifically discussed generators manufactured by Kawasaki during their conversation. He claimed that Dundee described the proposed unit as a deluxe 5000 watt Kawasaki generator. Dundee denied defendant's claim and insisted that he told defendant that the available unit was a generator set assembled by Brown and powered by a Kawasaki engine. Testimony revealed that generator sets normally have two main components, an alternator and an engine. The sets are generally named after the company that assembled the unit or the one that manufactured the alternator component. A *Kawasaki* generator is one that was manufactured by Kawasaki Motors Corporation and not simply one that is driven by a Kawasaki engine. Dundee quoted a price of $1,129.00 for the unit discussed and defendant said that he would think about the offer.

Between the 28th and the 30th of December, defendant continued to shop around for generators. After talking with several distributors, defendant concluded that Kawasaki generator sets were among the best in the industry and that plaintiff's offer of $1,129.00 was a good price. On December 30th, defendant called Dundee and ordered the generator they had previously talked about. The parties did not discuss or otherwise clarify their earlier conversation regarding the brand of generator to be ordered. Defendant also asked that wheels and a handle be added to the unit, which Dundee said could be done at a cost of about $50.00.

A Brown generator set powered by a Kawasaki engine was delivered to plaintiff's place of business on the morning of December 31st. The wheels and handle were installed and defendant was notified that the unit was ready to be picked up. When defendant arrived, an employee handed him a bill for the generator. The bill included a charge for freight, which defendant claimed had not been agreed to. He then inspected the generator and maintained that it was not what he ordered. Finally, defendant asked to see a user's manual. Plaintiff's employee searched for a manual, but surmised that the vendor failed to include one when it shipped the generator. Thereupon, defendant rejected the tendered unit.

On January 8, 1988, Gary Dundee telephoned defendant and told him that plaintiff had obtained a user's manual for the generator. Dundee also offered to lower the price of the generator, agreed to deduct the freight charge from defendant's bill, and offered to deliver the generator to defendant's home. The conversation ended without defendant agreeing to purchase the generator.

Several days later, defendant received a bill from plaintiff for $261.55. The total included a fifteen percent restocking fee, a charge for modification of the generator and charges for both inbound and outbound freight. Defendant had not responded to the bill by February 5th.

## PROCEDURAL HISTORY

On February 5, 1988, plaintiff sued defendant in small claims court for breach of contract. Plaintiff sought damages of $261.00, which included restocking, modification and freight charges for the rejected generator. Defendant counterclaimed alleging fraud in the inducement and breach of contract. His petition prayed for $1,500.00 compensatory damages and in excess of $10,000.00 punitive damages. The case was then transferred to the District Court of Tulsa County, where it was tried to a jury on October 2nd and 3rd, 1989.

At the close of evidence, both parties moved for a directed verdict on the other's cause of action. Defendant's motion for a directed verdict was overruled. The court granted plaintiff's motion to dismiss defendant's fraud claim, but overruled its motion with respect to defendant's contract claim and submitted that issue to the jury. The jury returned verdicts for plaintiff on both remaining claims and awarded plaintiff $267.00.

Defendant's motion for judgment notwithstanding the verdict or new trial was overruled. Plaintiff filed a motion to tax fees and costs in the amount of $3,667.10. After a hearing, the court ruled that 60% of plaintiff's fees were attributable to prosecuting plaintiff's claim, while 40% were attributable to defending against defendant's counterclaims. Therefore, the court assessed defendant $2,200.00 (60% of $3,667.10) for plaintiff's attorney fees and costs.

## ISSUES

On appeal, defendant asserts that the trial court erred in refusing to direct a verdict in his favor with regard to plaintiff's claim. Correspondingly, defendant argues that the court erred in denying his motion for judgment notwithstanding the verdict or new trial. He also contends that the jury was erroneously instructed regarding plaintiff's claim and his defense. Finally, defendant maintains that the trial court erred in dismissing his fraud claim. In its cross-appeal, plaintiff claims that the trial court erred in its calculation of attorney's fees. We hold that the trial court erred in denying defendant's motion for a directed verdict on plaintiff's claim. Consequently, plaintiff's award of attorney fees and costs is vacated. We hold that the trial court did not err in dismissing defendant's cause of action for fraud.

### I.

Defendant first contends, with respect to plaintiff's cause of action, that the trial court erred in refusing to direct a verdict in his favor. He also asserts that the trial court erred in denying his motion for judgment notwithstanding the verdict or new trial regarding plaintiff's claim. These arguments are based upon defendant's claimed right to reject the generator because plaintiff failed to provide a user's manual at the time of tender.

It is well established that a motion for directed verdict or motion for judgment N.O.V. raises the question of whether there is any evidence to support a judgment for the party against whom the motion is made. In ruling on such a motion the trial court must consider as true all the evidence and all the inferences reasonably drawn therefrom favorable to the party against whom the motion is made and any conflicting evidence favorable to the movant must be disregarded. *Woods v. Fruehauf Trailer Corp.*, 765 P.2d 770, 773 (Okla.1988) (citations omitted).

Defendant argues that the contract for the purchase of the generator contained an implied requirement that plaintiff provide a user's manual. The undisputed evidence showed that plaintiff did not produce, either before or after defendant's specific request, a user's manual when it tendered the generator unit. Defendant therefore asserts that the evidence presented at trial will not, as a matter of law, support a judgment for plaintiff because defendant rightfully rejected the generator. We agree.

Oklahoma's Uniform Commercial Code defines an agreement as "the bargain of

the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance...." 12A O.S.Supp.1984 § 1–201(3). "Whether an agreement has legal consequences is determined by the provisions of the Uniform Commercial Code, if applicable; otherwise by the law of contracts." *Id.* The term "contract" is defined as "the total legal obligation which results from the parties' agreement as affected by the provisions of the Uniform Commercial Code and any other applicable rules of law." 12A O.S.Supp.1984 § 1–201(11).

Defendant contends, and we agree, that usage of trade required plaintiff to supply a user's manual with the tendered generator. "A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." 12A O.S.1981 § 1–205(2). Section 1–205(2) provides that the existence and scope of a trade usage are to be proven as facts. In the present case, Michael Bryant, an employee of plaintiff's business, testified that purchasers of most major appliances are ordinarily supplied with an operator's manual. Gary Dundee, plaintiff's vice-president, agreed that it was not unreasonable for defendant to expect an operator's manual with the generator. Dundee apparently sought and claimed that he had received a user's manual within eight days of defendant's rejection of the generator. He then telephoned defendant and informed him that a manual had been obtained. Thus, it is reasonable to assume that Dundee also considered a manual to be an important aspect of the agreement. More extensive arguments and authority concerning trade usage were presented to the trial court in defendant's post-trial motion.

■ Notwithstanding § 1–205(2), courts may take judicial notice of a general trade usage or a generally known fact. *United States v. Stanolind Crude Oil Purchasing Co.*, 113 F.2d 194, 200 (10th Cir.1940); *Bd. of Educ. of Indep. School Dist. No. 20 v. Adams*, 465 P.2d 464, 467 (Okla.1970). *See also* 12 O.S.1981 § 2202(C), which states that a court may take judicial notice of a fact, "whether requested or not." It is a matter of common knowledge that manufacturers and suppliers of consumer equipment, machines and appliances generally provide use and care instructions with their products. Manufacturers advise purchasers to read manuals and become familiar with the proper and safe way to maintain and operate their equipment. Such advice is of paramount importance where, as here, the product poses a serious risk of danger to life and property if improperly used. It is difficult to imagine a consumer buying any new piece of equipment, machine or appliance without being supplied operational and care instructions. Defendant had a reasonable expectation that a user's manual would accompany his purchase of a powerful and potentially dangerous 5000 watt generator.

In the present case, the trade usage in question was both proven to the trial court and so commonly known as to have permitted the court to take judicial notice of its existence. Thus, we find that general trade usage supplemented the terms of the agreement to require that plaintiff supply a user's manual with the generator unit. *See* 12A O.S.1981 § 1–205(3). Because no user's manual was produced at the time of tender, the delivery failed to conform to the contract and defendant rightfully rejected the generator. 12A O.S.1981 § 2–601. Accordingly, we hold that the evidence did not support the judgment in favor of plaintiff. The judgment in favor of plaintiff on plaintiff's claim is therefore REVERSED.[1]

As a consequence of this decision, we need not address defendant's proposition that the jury was erroneously instructed

1. Plaintiff's argument that evidence of trade usage was barred by § 1–205(6) is without merit. Plaintiff had sufficient notice of this defense from the outset of litigation. Defendant argued throughout trial and in his post-trial motion that he rightfully rejected the generator because no user's manual was provided. Furthermore, plaintiff has failed to prove that the introduction of such evidence resulted in unfair surprise.

regarding plaintiff's claim or his defense. Finally, because defendant is the prevailing party on plaintiff's cause of action, the award to plaintiff of attorney fees and costs is VACATED.

## II.

▆ Defendant next contends that the trial court erred in dismissing his claim for fraud in the inducement. As a general rule, fraud is a question of fact to be determined by the jury if there is conflicting evidence. *Lester v. Sparks*, 583 P.2d 1097, 1100–1101 (Okla.1978). Before the issue may be properly submitted to the jury, however, the party who brings the claim must present evidence of each element of fraud. *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 177 (Okla.1988). In determining whether the trial court erred in directing a verdict for the defending party, this Court will consider the evidence in the light most favorable to the claimant, together with reasonable inferences to be drawn therefrom. *Spiller v. Massey & Moore*, 406 P.2d 467, 473 (Okla.1965); *Jones v. Goldberger*, 323 P.2d 344, 347 (Okla.1958).

We have reviewed the evidence in the light most favorable to defendant and conclude that defendant failed to present sufficient evidence of each element of fraud to establish a legal cause of action. Accordingly, we hold that the trial court properly refused to submit such claim to the jury. The trial court's decision to dismiss defendant's fraud claim is therefore AFFIRMED.

## CONCLUSION

The judgment for plaintiff on plaintiff's cause of action is REVERSED and the trial court is instructed to enter judgment in favor of defendant. Consequently, the award of attorney fees and costs to plaintiff arising from that judgment is VACATED. The judgment for plaintiff on defendant's counterclaim for fraud in the inducement is AFFIRMED. Because neither party appeals the judgment for plaintiff on defendant's counterclaim for breach of contract, that judgment remains undisturbed.

HODGES, V.C.J., and HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

LAVENDER, SIMMS and SUMMERS, JJ., concur in part; dissent in part.

OPALA, C.J., not participating.

SIMMS, Justice, dissenting:

I concur in Part II of the majority opinion that there is an absence of proof of fraud, however I must respectfully dissent from Part I of the opinion and remanding the cause for another trial.

In ruling upon Appellant's motion for new trial, the trial judge made the following observation of record:

"Defendant's Motion for New Trial overruled; the trial record was devoid of any evidence that established by implication from *usage or trade* that an operator's manual was part of the "agreement" of the parties in connection with the sale of an electric generator; *there was no request made by the defendant at trial* for the Court to take *judicial notice* of this fact nor would the fact have been susceptible of proof by *judicial notice* if the request had been made; to the extent that the evidence suggests that the bargain of the parties in fact as found in their language called for the defendant to be provided with an operator's manual, the jury apparently found that the Plaintiff complied with this obligation ..." [E.A.]

Addressing the issue of judicial notice, 12 O.S.1991 § 2202{C} provides: "A court *may* take judicial notice, whether requested or not.", while § 2202{D} reads: "A court *shall* take judicial notice *if requested* by a party *and supplied with the necessary information*." [E.A.] A page by page, line by line examination of the record made below reflects no request of the trial judge to take judicial notice of any *custom or usage* before or during trial. Neither was the court supplied with the necessary information as to the custom in the trade of supplying an owner's manual with the

product, i.e., the generator. Appellant, in his reply brief directs our attention to pages eighty-one and eighty-two of the trial transcript as providing proof of the scope of trade usage. These pages of the transcript reflect only that a single manufacturer, Kawasaki, supplies a purchaser with such a manual, and not that this is common custom and usage in the trade.

Since the court was not requested to take judicial notice of trade custom, should the trial judge, nonetheless, have taken judicial notice of something which was not offered in evidence? I suggest the answer is no. Appellant's first attempt to prove that a user's manual was a necessary incident of the sale came only after the verdict and then by affidavits of two law school professors and a respected practitioner of law. These affidavits were untimely as well as being rank heresay. They came too late. Title 12A O.S.1991 § 1–205(2) provides that "... The existence and scope of such a usage are to be *proved as facts...*" [E.A.] Moreover, as appellee points out, 12A O.S. 1991 § 1–205(6) provides: "Evidence of a relevant usage of trade by one party is not admissible unless and until he has given the other party such notice as the court finds sufficient to prevent unfair surprise to the latter."

There is no dispute that appellant was tendered a document {Def. Ex. 9} titled "Self Regulated Alternators Single Phase—Operating and Maintenance Instructions". Appellant contended before the jury this was not a user's manual, appellee contended it was. Thus, it was for the jury to decide.

In the briefs filed in this appeal, controversy has arisen as to whether or not the failure to furnish the users manual was actually the reason appellant refused delivery of the generator. Appellant testified at one point that "I rejected it (the generator) because it was not a Kawasaki generator and he didn't deny that." In his other trial testimony, appellant said, "Well, I don't think I can answer yes or no because I didn't reject it solely on that basis (insufficiency of the manual). It was a major factor in determining that this was not what I ordered."

Apparently, failure to deliver a satisfactory user's manual was not the primary reason for rejection of the generator, but was only a factor used by appellant in deciding, at least in his own mind, the generator he was offered was not the one he had ordered. Thus, the issue regarding the user's manual becomes less significant.

Finally, the record reveals that appellant's lawyer at trial did not object to any of the court's prepared instructions to the jury. However, appellant personally did object to certain jury instructions dealing with the right of rejection and recovery under that theory. At no time while the instructions to the jury were being settled, did appellant even suggest the court take judicial notice of trade usage or custom, nor did any of appellant's requested instructions mention this theory.

Examination of the trial court's instructions to the jury do not reflect any fundamental error. The fact issues were submitted to a jury of twelve citizens and the jury unanimously found adversely to appellant.

I would affirm judgment pronounced in accordance with the jury verdict.

I am authorized to state that Justice LAVENDER joins with me in the views expressed herein.