2004 OK 25

**Julie BARNES, Appellant,**

v.

**OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.**

No. 97,259.

Supreme Court of Oklahoma.

April 6, 2004.

Rehearing Denied June 28, 2004.

James A. Scimeca, Miller, Dollarhide, and Joe E. White, Jr., White Law Firm, Oklahoma City, for Plaintiff/Appellant.

Robert B. Mills and Margaret K. Myers, Oklahoma City, for Defendant/Appellee.

HARGRAVE, J.

¶1 The question in this post-remand proceeding is whether the plaintiff/appellant established entitlement to award of attorney fees under an exception to the American Rule.[1] In *Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.*, 2000 OK 55, 11 P.3d 162, the plaintiff/appellant's award of attorney fees under *Brashier v. Farmers Ins. Co., Inc.*, 1996 OK 86, 925 P.2d 20, was reversed and the case remanded to give plaintiff the opportunity to seek attorney fees under an exception to the American Rule. On remand, the plaintiff asserted three grounds for entitlement to attorney fees: 1) that attorney fees are allowed by statute: 36 O.S.2001 § 1219; 2) common law exception for bad faith litigation conduct under *City National Bank & Trust Co. v. Owens*, 1977 OK 86, 565 P.2d 4; and 3) common law exception for conferring a benefit on a class of persons/private attorney general rationale. The third-listed exception is not before us because it

was not raised in the petition for certiorari. *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438.

¶2 Plaintiff had been awarded attorney fees originally by the trial court, under authority of *Brashier v. Farmers Ins. Co., Inc.*, 1996 OK 86, 925 P.2d 20, as a common law element of recovery on a bad faith claim on an uninsured motorist insurance policy. On appeal, we overruled *Brashier* to the extent that it held a UM/UIM insured entitled to recover attorney fees as a common law element of damage for an insurer's bad faith refusal to settle a UM/UIM claim. Because Barnes did not have the benefit of our ruling when seeking attorney fees in the trial court, we remanded to the trial court to give her an opportunity to apply for attorney fees under a recognized exception to the American Rule. 11 P.3d at 182. We noted that one such exception is where an opponent engages in bad faith, wanton or oppressive litigation conduct wherein the trial court in the exercise of its inherent equitable power may award attorney fees. We said that whether Barnes could prove herself entitled to such fees under the *City National* exception would be a question for the trial court upon proper presentation of pleadings and proof. *Id.* We stated in footnote 17 that no statutory grounds exist for an award of attorney fees in UM/UIM lawsuits by insureds against their insurance companies.

¶3 Both the trial court and the Court of Civil Appeals rejected plaintiff's argument that § 1219 provided a statutory basis for attorney fees. As to the bad faith litigation conduct exception to the American Rule under *City National*, *supra*, the trial court found that no such conduct was present. The Court of Civil Appeals reversed, finding that *City National* applied. The Court of Civil Appeals then applied 23 O.S. § 103 to limit the amount of attorney fees to be awarded to $10,000. We granted certiorari.

■ ¶4 Plaintiff argues that there is a statutory basis for award of attorney fees in UM cases under 36 O.S.2001 § 1219, which

1. Under the "American Rule" governing the award of attorney fees to a prevailing party, attorney fees are not ordinarily recoverable in

the absence of a statute or an enforceable contract. *Hall v. Cole*, 412 U.S. 1, 4, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973).

allows for attorneys fees as a result of litigation in cases brought on "accident and health" insurance policies.[2] Section 1219 requires clean claims of an insured to be reimbursed within 45 calendar days after receipt of the claim. In the event litigation should ensue based upon such a claim, § 1219(G) provides that the prevailing party shall be entitled to recover a reasonable attorney's fee to be set by the court and taxed as costs against the party or parties who do not prevail. Plaintiff interprets "accident and health policy" to include uninsured motorist policies.

¶ 5 "Accident and health insurance policy" is defined in subsection (B)(1) of section 1219 as any policy that provides accident and health insurance as defined in 36 O.S.1991 § 703. Section 703 defines accident and health insurance as follows:

> " 'Accident and health insurance' is insurance against bodily injury, disablement, or death by an accident or accidental means, or the expense thereof, or against disablement or expense resulting from sickness, and every insurance appertaining thereto."

Plaintiffs primary argument is that because Julie Barnes was involved in an accident and sued her UM insurer, then this was an action under an accident and health insurance policy.

¶ 6 The defendant argues that the definition in 36 O.S. § 703 does not include uninsured motorist coverage. Vehicle insurance is defined separately from health and accident insurance. 36 O.S. § 706 defines vehicle insurance as:

> "... insurance against loss of or damage to any land vehicle ... and against *any loss, liability or expense resulting from or incident to ownership, maintenance or use of any such vehicle* ... together with insurance against accidental death or accidental injury to individuals, including the named insured, while in, entering, alighting from, adjusting, repairing, cranking or caused by being struck by a vehicle ..., if such insurance is issued as a part of insurance on the vehicle ..." (emphasis added).

Section 707 of title 36, which defines "casualty insurance," specifically states that it includes vehicle insurance as defined in § 706 and accident and health insurance as defined in § 703, along with several other kinds of insurance listed therein. The Health Care Fraud Prevention Act, codified at 36 O.S. § 1219.1 applies to "accident and health insurance policies" as defined therein. A review of the sections of the Insurance Code persuades us that when the legislature intends to include or exclude a particular kind of insurance, it does so. Section 1219 was amended by Laws 2003, ch. 197 § 52 to supplement the definition of "accident and health insurance policy" to include any subscriber certificate or any evidence of coverage issued by a health maintenance organization to any person in this state.

¶ 7 Plaintiff argues that *Lester v. Sparks*, 1978 OK 68, 583 P.2d 1097 supports her position because *Sparks* noted that a single automobile insurance policy contains a number of different kinds of insurance coverage; plaintiff quotes from pages 1099–1100:

> "As we analyze this policy and similar standardized policies, we find it contains six or more conditions, coverages or contracts interwoven and dealt with. Our statutes contemplate that certain coverages are not only overlapping but are includ-

---

2. 36 O.S.2001 § 1219 provides, in pertinent part:

A. In the administration, servicing, or processing of any accident and health insurance policy, every insurer shall reimburse all clean claims of an insured, an assignee of the insured, or a health care provider within forty-five (45) calendar days after receipt of the claim by the insurer.

B. As used in this section:
1. "Accident and health insurance policy" or "policy" means any policy, certificate, contract, agreement or other instrument that provides accident and health insurance, as defined in Section 703 of this title, to any person in this state;

2. "Clean claim" means a claim that has no defect or impropriety, including a lack of any required substantiating documentation, or particular circumstance requiring special treatment that impedes prompt payment.
. . .
G. In the event litigation should ensue based upon such a claim, the prevailing party shall be entitled to recover a reasonable attorney's fee to be set by the court and taxed as costs against the party or parties who do not prevail.
. . .

ed in an automobile policy; see 36 O.S.1971 §§ 701. It is not bold to say that a modern automobile insurance policy encompasses accident, property, vehicle and casualty coverages."

Barnes' reliance on *Sparks* is misplaced. *Sparks* says only that certain coverages not only overlap, but are included in an automobile policy. It says only that a modern *automobile insurance policy* encompasses accident, property, vehicle and casualty coverage. It does not mean that a UM policy is also an "accident and health policy" as defined in § 1219. An automobile insurance policy does encompass many types of coverage, one of which is UM, if that coverage is elected by the insured. We cannot interpret § 1219 as a basis for the award of attorney fees in this uninsured motorist policy case.

¶ 8 Uninsured motorist insurance is covered at 36 O.S.2001 § 3636. Article 36 of the Insurance Code applies to the insurance contract in general. 36 O.S. § 3629 deals with forms of proof of loss and offer of settlement or rejection of claims. Section 3629(B) places a duty on the insurer, after receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. Thus, § 3629(B) provides for prevailing party attorney fees where an insurer fails to submit an offer of settlement or rejection of the claim within 90 days after proof of loss and where judgment is entered. However, the last line of section 3629(B) specifically excludes uninsured motorist coverage from application of the section: "This provision shall not apply to uninsured motorist coverage."

¶ 9 Section 3629(B) specifically addresses uninsured motorist coverage. It provides for the award of prevailing party attorney fees *except for* uninsured motorist coverage, to which the section does not apply. Accident and health insurance is defined separately from vehicle insurance, and § 1219 applies only to cases involving accident and health insurance. The accident and health insurer is required to reimburse all clean claims

within 45 calendar days after receipt of the claim. It appears that the intent of the legislature was to create a shorter time period for the reimbursement of clean claims on accident and health policies. Defendants point out that the purpose of uninsured motorist insurance is to provide an injured person with the same protection that he would have had if the at-fault motorist had carried liability insurance.

¶ 10 We are not persuaded by plaintiff's arguments. We reiterated in *Barnes* that there is no statutory authorization for recovery of an attorney fee in this case. Footnote 17 of the opinion stated that the decision was limited to UM/UIM lawsuits by insureds against their insurance companies, ie., a situation where no statute or contractual provision allows for the recovery of attorney fees. 11 P.3d at 182. We referenced, for comparison, *Taylor v. State Farm Fire & Cas. Co.*, 1999 OK 44, 981 P.2d 1253. Plaintiff/appellant relies upon *Taylor* as support for the award of attorney fees to her. *Taylor*, however, was a suit by insureds under their homeowner's insurance policy; it was not an uninsured motorist case. The questions presented were certified to this Court from a federal court, and basically asked whether *Brashier v. Farmers Ins. Co.*, 1996 OK 86, 925 P.2d 20, barred the right to recover attorney fees and prejudgment interest under 36 O.S. § 3629 on the facts presented. *Taylor* listed two sources of authority for counsel-fee allowances in bad-faith tort claims: 36 O.S. § 3629 and the *Brashier* rationale. Inasmuch as *Brashier's* allowance of attorney fees in UM/UIM cases was overruled in *Barnes v. Oklahoma Farm Bureau*, 2000 OK 55, 11 P.3d 162, the *Taylor* case does not provide support for plaintiff/appellant's quest. *Taylor* recognized that UM coverage was explicitly excluded from the purview of 36 O.S. § 3629. 981 P.2d at 1259.

¶ 11 We cannot find that uninsured motorist insurance is "accident and health" insurance as contemplated by section 1219 and section 703. We would be thwarting legislative intent if we ignored the plain language of 36 O.S. § 3629(B) and redefined UM insurance as "health and accident" insurance. If the legislature wishes to provide for attorney

fees in UM cases, then they can do so by legislative enactment.[3]

■ ¶ 12 The plaintiff, on remand, also sought to recover attorney fees under "bad faith litigation conduct" exception to the American Rule set out in *City National Bank & Trust Co. v. Owens,* 1977 OK 86, 565 P.2d 4, which is known as the "bad faith, wanton or oppressive litigation misconduct" exception. *See, Barnes v. Okla. Farm Bureau Mut. Ins.,* 11 P.3d 162 at 182. Plaintiff's argument is that the defendant in this case had no legitimate defense to the underlying contract claim and then compounded its conduct by it's "ill-fated attempt to defend the bad faith claim." The trial court denied attorney fees, finding that "the actions in this case do not fall within the exception" as set forth in the case of *City National Bank & Trust Co. v. Owens.*

¶ 13 *City National* recognized certain exceptions to the American Rule in Oklahoma, including the award of counsel fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." 565 P.2d at 8. Because plaintiff's actions were oppressive, and because the oppressive action of a party was, even at common law recognized as giving rise to an exception to the general rule regarding the awarding of attorney fees, we held that the court, in the exercise of its inherent equitable powers did not exceed its jurisdiction, powers or discretion. 565 P.2d at 8–9. *City National* specifically pointed out that the defendant was not seeking recovery of attorney fees as prevailing party in the case, but rather for the time and expense wasted when the plaintiff dismissed its case without prejudice after 4 days of trial, after all the evidence and testimony had been introduced, the parties had rested and the court had prepared instructions. We said that in that case there was little doubt that plaintiff's actions were oppressive because the defendant incurred great time and expense in the trial of the case, which was all for nothing after plaintiff's dismissal of the case without

prejudice. The plaintiff took the opportunity to test the strength and weakness of his case, which permitted the plaintiff to use the courtroom as a "rehearsal hall" at the expense of his adversaries and the People. 565 P.2d at 7. *City National* allowed the award of attorney fees in that case for oppressive litigation conduct. As we noted in *Barnes,* the trial court is exercising its inherent equitable power in awarding such attorney fees. 11 P.3d at 182.

¶ 14 In the case at bar, the defendant argued that there was no finding of bad faith *litigation conduct* in this case, as there was in *City National v. Owens,* but rather that the conduct complained of was what led to filing the lawsuit in the first place. The trial court agreed that no *City National* circumstances existed. We recently discussed the difference between bad faith litigation conduct, as in *City National,* and the situation where the conduct sanctioned was for bringing the lawsuit and defending against a motion to dismiss. *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, 61 P.3d 234, 247.

¶ 15 In *State ex rel. Tal,* we overturned the trial court's award of attorney fees under *City National v. Owens.* We said that for the inherent authority of the trial court to award attorney fees against a party for bad faith litigation misconduct to apply, "overriding considerations" must indicate the need for such a recovery. In *Tal* the trial court had sanctioned the plaintiffs for bringing a *qui tam* action to challenge Oklahoma City's development project after the city obtained a declaratory judgment that the agreements were lawful. A review of the record in that case led us to conclude that the plaintiffs were not sanctioned for any actual litigation misconduct or culpable conduct of their own, but rather the conduct sanctioned was for having filed the lawsuit and for mounting a response to the motion to dismiss. We said that it was not objectively unreasonable to have filed the *qui tam* suit and to have mounted a response to defendants' motion to dismiss and because the record did not sup-

---

**3.** We also said in *Barnes* that if attorney fees are to be recoverable in UM/UIM litigation brought by an insured against his/her insurer, like that brought by Barnes, it is the legislature that must authorize such a course, as it has done for other kinds of insurer/insured litigation in section 3629(B). 11 P.3d at 182.

port a conclusion that there was some over-riding need for a monetary attorney fee sanction, the trial judge abused his discretion in using his inherent power against plaintiffs as he did. *Tal* at 248–249. *See also, Sooner Trailer Mfg. Co. v. Gay,* 1998 OK CIV APP 194, 972 P.2d 1177, 1179 *("The egregious conduct which City National addressed was bad faith conduct during the litigation, not the conduct occurring which gave rise to the litigation.")*

¶ 16 The conduct complained of in the case at bar by defendant is the conduct that led to the bringing of the action. Defendant's complained-of actions in the case at bar formed the basis of the bad faith claim filed by the plaintiff, and formed the basis for the award of punitive damages in the case.

¶ 17 Because we agree with the trial court that plaintiff has not shown entitlement to attorney fees under the bad-faith litigation conduct exception of *City National,* we need not address plaintiff's assertions that 23 O.S. § 103 is unconstitutional. That section limits attorney fees awarded as a penalty in actions for damages for personal injury or to personal rights to $10,000.[4]

¶ 18 Title 23 O.S.2001 § 103 provides:

In any action for damages for personal injury except injury resulting in death, or in any action for damages to personal rights the court shall, subsequent to adjudication on the merits and upon motion of a prevailing party, determine *whether a claim or defense asserted in the action by a nonprevailing party* was asserted in bad faith, was not well grounded in fact, or was unwarranted by existing law or good faith argument for the extension, modification or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,000.00) for reasonable costs, including attorneys fees, incurred with respect to such claim or defense. (italics added)

---

**4.** This court previously has determined that attorney fees awarded for personal injury or damages to personal rights under the *City National v. Owens* exception to the American Rule are limited to $10,000 by 23 O.S. § 103. *Gorst v. Wagner,* 1993 OK 50, 865 P.2d 1227. In *Gorst,* we held that the trial court's award of attorney fees in

Plaintiff did not assert a right to attorney fees under section 103. *See, Meadows v. Wal–Mart Stores,* 2001 OK 25, 21 P.3d 48;*Beard v. Richards,* 1991 OK 117, 820 P.2d 812. Plaintiff argued that section 103 does not apply.

## CONCLUSION

¶ 19 On remand from *Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,* 2000 OK 55, 11 P.3d 162, plaintiff was given leave to seek attorney fees under an exception, if any, to the American Rule. Plaintiff sought to assert a statutory basis for the award under 36 O.S. § 1219, which allows for attorney fees in certain claims upon "accident and health" policies. We find that uninsured motorist insurance is not accident and health insurance as defined by section 1219 and section 703. As an exception to the American Rule, plaintiff sought to recover attorney fees for oppressive litigation conduct under authority of *City National Bank v. Owens.* But the conduct complained of was not oppressive conduct during litigation so as to trigger the trial court's inherent power to award attorney fees. We agree with the trial court that the actions complained of do not fall within the *City National* bad faith litigation conduct exception to the American Rule. Finally, plaintiff did not seek to recover attorney fees under 23 O.S. § 103 and, based on our decision that the *City National* exception does not apply here, we need not address plaintiff's arguments that § 103 is unconstitutional.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION IS VACATED; TRIAL COURT AFFIRMED.**

¶ 20 Concur: WATT, C.J., HODGES, KAUGER, BOUDREAU, WINCHESTER, EDMONDSON, JJ.

¶ 21 Concur in part; dissent in part: LAVENDER, J.

---

excess of $10,000.00 for bad faith litigation conduct in a civil conspiracy case violated the limitations of 23 O.S. § 103 and that, to the extent that the legislature had pre-empted the field by enacting § 103, *City National v. Owens* was inapplicable. 856 P.2d at 1228.

¶ 22 OPALA, V.C.J., dissenting.

I must recede from today's pronouncement. The court's **restrictive** construction of the attorney's-fee allowance provisions of 36 O.S.2001 § 1219 and § 3629(B) **offends** the prohibition of disuniformity in court-applied procedural norms. That interdiction stands imposed by the provisions of Art. 5 § 46, Okl. Const. See *Johnson v. Tony's Town Mister Quik,* 1996 OK 138, ¶ 5, 915 P.2d 355, 357–58; *Reynolds v. Porter,* 1988 OK 88, ¶¶ 13–19, 760 P.2d 816, 822; *Maule v. Independent School Dist. No. 9,* 1985 OK 110, ¶ 12, 714 P.2d 198, 203–204. For my **own** analysis of the insurer's counsel-fee liability in this very cause see *Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,* 2000 OK 55, 11 P.3d 162, 183–190 (Opala, J., dissenting).