Terry G. KARLSON, Appellant,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, and Alan Curtis Massey and Allstate Insurance Company, Appellees.

Terry G. KARLSON, surviving father of Brian Karlson, Deceased, Appellant,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, and Allan Curtis Massey, and Allstate Insurance Company, Appellees.

Jennifer CAKORA (Karlson), a minor of the age of 15 years, who sues By and Through her stepfather, Terry G. KARLSON, as next friend, and Terry G. Karlson, Individually, Appellant,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, and Allstate Insurance Company, Appellees.

Dale KARLSON, a minor of the age of 5 who sues By and Through his father, Terry G. KARLSON, as next friend, and Terry G. Karlson, Individually, Appellant,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, and Alan Curtis Massey, and Allstate Insurance Company, Appellees.

Terry G. KARLSON, as surviving husband of his wife, Dorothy Karlson, Deceased, Appellant,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, and Alan Curtis Massey, and Allstate Insurance Company, Appellees.

Nos. 63090, 63046.

Supreme Court of Oklahoma.

May 28, 1985.

Tom Sullivan, Sr., Miskovsky, Sullivan & Taylor, Oklahoma City, for appellant.

George D. Davis, McKinney, Stringer & Webster, Oklahoma City, for appellee, Allstate Ins. Co.

Diane Davis Huckins, Asst. Municipal Counselor, Oklahoma City, for appellee, City of Oklahoma City.

DOOLIN, Vice Chief Justice.

This matter turns on the issue of whether an injured party, as plaintiff, in a negligence action against a municipality, is "legally entitled to recover" damages in excess of the limits of liability imposed by the Political Subdivisions Tort Claims Act, as that phrase is used in the statutes governing underinsured motorist insurance coverage.

We hold the insured party is so entitled.

The factual background which gave rise to this issue is as follows: the plaintiffs sued the City of Oklahoma City for damages for injuries and wrongful death arising out of an automobile collision involving a city police vehicle. Claiming their damages exceed the maximum liability of the City under the Political Subdivisions Tort Claims Act, the plaintiffs joined as defendant the Allstate Insurance Company, seeking to recover the excess damages under the underinsured motorists provisions of the insurance policy issued by Allstate on the vehicle occupied by the plaintiffs. The trial court sustained the Motion for Summary Judgment of Allstate on the theory that the plaintiffs are not legally entitled to recover damages against the City in excess of the maximum amount of the City's liability under the Tort Claims Act because the City is immune from suit beyond the maximum amount established by the statute.

The statutory provisions with which we are concerned are 36 O.S.1981, § 3636, which provides, in pertinent part:

(B) The policy referred to in subsection (A) of this section shall provide cover-

age therein or supplemental thereto for the protection of persons insured thereunder who are *legally entitled to recover* damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

\*   \*   \*   \*   \*   \*

(C)... For the purpose of this coverage, the term "Uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim, regardless of the amount of coverage of either of the parties in relation to each other. [emphasis added].

We must also consider 51 O.S. 1981, § 154, which says:

A. The liability of a political subdivision or an employee on claims within the scope of this act shall not exceed:

1. Twenty-five Thousand Dollars ($25,000) to any claimant for any number of claims for damage to or destruction of property, including consequential damages arising out of a single accident or occurrence;

2. Fifty Thousand Dollars ($50,000) to any claimant for all other claims arising out of a single accident or occurrence; or

3. Three Hundred Thousand Dollars ($300,000) for any number of claims arising out of a single occurrence or accident.

B. No award for damages on any claim against a political subdivision or employee shall include punitive or exemplary damages. The limitation imposed by this section on individual claimants includes damage claimed for loss of services or loss of support arising out of the same tort.

The problem raised by the instant case is to determine the effect of the limitation of liability found in 51 O.S.1981, § 154 on the key requirement of 36 O.S.1981, § 3636(B) that the persons to be protected by uninsured motorist insurance are persons "legally entitled to recover" for the damages they have sustained.

This controversy, like all disputes between insurers and their insureds, is essentially a contract dispute and should be resolved by recourse to established principals of contract law, as those principals have been specially applied to insurance policies. (See *Tipton v. Pike*, 550 F.Supp. 191 (D.C. Ok.1982)).

We have held, in *Lester v. Sparks*, 583 P.2d 1097 (Okl.1978) that an insurance policy is a contract and must be given the same consideration as any other contract, except that in cases of doubt, the contract will be construed more strongly against the insurer.

More specifically, and in language more applicable to the case before us, we said in *Aetna Ins. Co. v. Zoblotsky*, 481 P.2d 761 (Okl.1971).

Contracts of insurance will be liberally construed in favor of the object to be accomplished and if the provisions of a policy are capable of being contrued in two ways, that interpretation should be placed on such provisions which is most favorable to the insured.

The object to be accomplished by the uninsured/underinsured motorist provisions of the automobile liability insurance policy issued by Allstate to the insured is that the insured party would be indemnified should he be unable to recover fully from the motorist causing his injuries.

The question raised by this appeal is whether or not the insured is "legally entitled to recover" from the defendant city, and thus entitled to receive the benefits of the uninsured/underinsured motorist provisions of his automobile liability insurance.

This Court has only once before interpreted the phrase "legally entitled to recover." Justice Opala, writing for the majority in *Uptegraft v. Home Insurance Co.*, 662 P.2d 681 (Okl.1983) said:

The words, "legally entitled to recover" simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise

to damages and prove the extent of those damages.

There are undoubtedly other constructions which might be given this key phrase, but to be consistent with the rules we have stated in *Lester* and *Zoblotsky, supra,* we must disregard such other definitions and apply the one most favorable to the insured.

In applying the *Uptegraft* interpretation to the facts of this appeal, we reach a result which is essentially fair and which comports with the fundamental concept that all contracts should be construed so as to effect the intentions of the parties.

When the insured and Allstate entered into their contract, they contemplated a situation where Allstate might be required to pay for injuries caused by some tortfeasor where that tortfeasor was not able to make full compensation for those injuries. Whether the tortfeasor's inability to make full compensation results from lack of sufficient insurance, insolvency, or for other reason, is irrelevant.

The intention of the parties at the time of their contracting was that Allstate, not its insured, would assume the risk that the insured might suffer a loss for which a tortfeasor could not make compensation. Our holding here merely gives effect to that intent.

In summary, we hold that in a situation where the liability of a tortfeasor is limited by the Political Subdivisions Tort Claims Act, to an amount which will not compensate an insured for all his proven losses suffered in an automobile accident, that insured may recover from his insurer through the uninsured/underinsured motorist provisions of his automobile liability insurance, according to the terms thereof.

1. In an extensively amended version the Political Subdivision Tort Claims Act will become The Governmental Tort Claims Act. 51 O.S. Supp.1984 §§ 151 et seq.

2. In litigation here are four tort claims against Oklahoma City—some for death and some for bodily injuries. All of these claims arose August 10, 1982. It is not contested that the plaintiffs below may be regarded as being "insured" un-

The decision of the trial court in granting summary judgment to Appellee, Allstate Insurance Company is REVERSED and the matter is REMANDED for further proceedings.

SIMMS, C.J., and LAVENDER, HARGRAVE, ALMA WILSON and SUMMERS, JJ., concur.

HODGES and OPALA, JJ., dissent.

KAUGER, J., disqualified.

OPALA, Justice, with whom HODGES, Justice, joins, dissenting.

The precise, first impression question posed for decision is whether—to the extent shown to exceed the recovery limits set in the Political Subdivision Tort Claims Act, 51 O.S.1981 §§ 151 et seq.[1]—damages from bodily injury or death,[2] sustained as a result of negligence in the municipal operation of an automobile, fall within the protection of UM (uninsured/underinsured motorist) coverage. This coverage provides indemnity for the uninsured/underinsured liability of one from whom the insured is *"legally entitled to recover"*. The court's answer is *in the affirmative*. Because mine is in the *negative*, I must dissent from today's pronouncement.

UM coverage affords first-party protection against uninsured/underinsured loss.[3] The indemnity provided by its terms is for *legally recoverable liability*, i.e. liability which is *cognizable* by the norms of substantive law applicable to the insured's claim against the legally responsible third party.[4] The obligation so insured clearly is *coextensive* with tortfeasor's liability—not one iota broader.

der the terms of UM coverage procured by their car owner-host.

3. *Uptegraft v. Home Insurance Co.,* Okl., 662 P.2d 681, 684 [1983].

4. The existence of uninsured tortfeasor's legally cognizable liability is a *sine qua non* of the UM carrier's obligation. *Markham v. State Farm Insurance,* 464 F.2d 703 [10th Cir.1972].

Municipal liability is to be measured by the statutory limits prescribed in 51 O.S. 1981 § 154. If a city does satisfy this limit, the injured party has received from it *all* that one is "legally entitled to recover". An insured's legal claim against his UM carrier cannot be for more than the maximum legal recovery against the uninsured/underinsured tortfeasor. By the terms of 51 O.S.1981 § 154 a city is not merely *immune from tort suit;* rather, it stands relieved *from all excess liability.*[5] Because *it* can have no legal responsibility above the statutory recovery limits,[6] neither does the injured party's UM carrier.[7] Neither the provisions of the controlling statute, 36 O.S.1981 § 3636(B), nor the policy issued to the insured obligated this UM insurer to provide indemnity for *every tort loss nonrecoverable by law.* The protection afforded by the coverage under consideration here clearly is both legislatively and contractually confined to damages the insured is *"legally entitled to recover ... from owners or operators of uninsured motor vehicles".*[8]

I would hold that a municipal tortfeasor with limited liability may not be legally characterized as an uninsured/underinsured motorist for imposition of suprastatutory recovery against a UM carrier; I would hence affirm the summary judgment[9] rendered below for the insurer.

ALMA WILSON, Justice, concurring.

Under the auspices of 36 O.S.1981 § 3636, an insured may procure insurance coverage for himself, as well as others, by electing to pay a premium for injury suffered at the instance of an uninsured or underinsured negligent tortfeasor. Technical limitation on the liability of the negligent tortfeasor provides no basis under the statute for reducing the amount of coverage due those entitled to compensation by virtue of premiums paid under a contract of insurance. Otherwise, insureds would be incapable of protecting themselves to the extent they are required to provide protection to unknown individuals. I do not believe the statute authorizes denial of equal protection to those entitled to full compensation under an insurance contract depending upon the fortuitous identity of the negligent tortfeasor.

---

**5.** The preamble to 51 O.S.1981 § 154 provides: *"The liability* of a political subdivision ... on claims within the scope of this act *shall not exceed:* * * *"* [emphasis supplied]

**6.** For a legal distinction between mere immunity from suit and immunity from legal responsibility (liability), see comments in Prosser, The Law of Torts, § 116 [1964], quoted in *Hooper v. Clements Food Company,* Okl., 694 P.2d 943, 946 [1985]. For a discussion of different classes of tort immunity enjoyed by a motorist, see Widiss, A Guide to Uninsured Motorist Coverage, § 2.27, p. 55 [1969].

**7.** See in this connection, *Williams v. Country Mutual Insurance Co.,* 28 Ill.App.3d 274, 328 N.E.2d 117, 119 [1975]; *Noland v. Farmers Insurance Exchange,* 413 S.W.2d 530 [Mo.App. 1967] and *Markham v. State Farm Insurance Co., supra* note 4.

**8.** The provisions of 36 O.S.1981 § 3636(B) are: "The policy ... shall provide coverage ... for the protection of persons insured thereunder who *are legally entitled to recover damages from*

*owners or operators of uninsured motor vehicles and hit-and-run motor vehicles ..."* [emphasis supplied]
The quoted provisions make it textually demonstrable that within the contemplation and meaning of § 3636(B) *nonrecoverable tort losses,* for which the motorist-actor bears no legal responsibility and is not answerable in damages, *do not constitute that motorist's uninsured/underinsured liability* indemnifiable under an injured party's UM coverage. By today's pronouncement in this appeal a far broader UM protection is mandated than (a) *is presently required* by statute, 36 O.S.1981 § 3636, and (b) *was provided* by the UM endorsement in suit.

**9.** This case, though mistakenly brought here by a petition for certiorari to review a certified interlocutory order, calls for our review of an appealable decision—a summary judgment for the insurer. Because it was filed within the time limit provided for an appeal, it may be treated as a proceeding-in-error. *Amarex, Inc. v. Baker,* Okl., 655 P.2d 1040, 1043 [1982] and *Prock v. District Court of Pittsburg County,* Okl., 630 P.2d 772, 775 [1981].