John ROBERTS, Jr., Appellee,

v.

**MID–CONTINENT CASUALTY COMPANY, an Oklahoma Corporation, Appellant.**

No. 70342.

Court of Appeals of Oklahoma, Division I.

Nov. 7, 1989.

Rehearing Denied Jan. 8, 1990.

Certiorari Denied May 2, 1990.

Richard D. Gibbon, Theresa G. Dreiling, Gibbon, Gladd & Associates, Tulsa, for appellant.

Jack I. Gaither, Tulsa, for appellee.

## MEMORANDUM OPINION

PATRICIA DOUGHERTY MacGUIGAN, Judge:

Appellee who carried automobile insurance including uninsured motorist coverage with Appellant was injured by the negligence of another in an automobile accident. The negligent party (tort-feasor) had a liability policy with the Farmers Insurance Company with the limits of $10,000. Appellee sought recovery directly from Appellant under the uninsured motorist coverage without claiming first against the tort-feasor. The trial court found that Appellee suffered injuries with a reasonable value of $60,000 and entered judgment therefor. The trial court found that Appellant was not entitled to receive a credit of $10,000 for the uncollected coverage afforded by Farmers Insurance Company to the tort-feasor. This appeal results.

Appellant argues that failing to give credit for the tort-feasor's liability coverage will make the uninsured motorist coverage primary, and therefore, an uninsured motorist carrier is entitled to a credit for the amount of liability coverage held by the tort-feasor. 36 O.S.1981 § 3636(A) provides in part that a policy for liability insurance:

> ... shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

36 O.S.1981 § 3636(C) further provides that the term " 'uninsured motor vehicle' shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other." 36 O.S.1981 § 3636(E) provides:

> In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made,.... Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.

 In uninsured motorist litigation today there is no need for a plaintiff to seek recovery first against the tort-feasor before liability can attach to the uninsured motorist carrier. *Keel v. M.F.A.*, 553 P.2d 153 (Okl.1976). The elements in an uninsured motorist action are separate, distinct, and different from those of a case in tort against the tort-feasor and, therefore, an uninsured motorist claim can be pursued after the expiration of the limitations period for a tort. *Uptegraft v. Home Insurance Company*, 662 P.2d 681 (Okl.1983). In *Karlson v. City of Oklahoma City*, 711 P.2d 72 (Okl.1985), the Supreme Court found that an insured may recover uninsured motorist benefits where the liability of the tort-feasor is limited by the Political Subdivision Tort Claims Act to an amount which will not compensate the insured for all his proven losses. The Court further stated that "the object to be accomplished by the uninsured/underinsured motorist provisions of the automobile liability insurance policy issued by Allstate to the insured is that the injured party would be indemnified should he be unable to recover fully from the motorist causing his injuries." The Court further found that the

"intention of the parties at the time of their contracting was that (the uninsured motorist carrier), not its insured, would assume the risk that the insured might suffer a loss for which a tort-feasor could not make compensation." In *Barfield v. Barfield,* 742 P.2d 1107 (Okl.1987), the Court stated that "collection of uninsured motorist benefits has been expressly allowed even where there would be no liability on the part of the tort-feasor, such as where the tort-feasor is a fellow-employee of the plaintiff, and despite the collection of workers' compensation benefits which are otherwise an exclusive remedy." In *Bill Hodges Truck Company, Inc. v. Humphrey,* 704 P.2d 94 (Okl.Ct.App.1984), this Court held that a workers' compensation carrier may not set-off against a disability award to an injured worker the amount recovered by the worker against his uninsured motorist carrier.

Appellant, however, is essentially asking how much coverage the injured plaintiff is entitled to when he follows the options outlined in the *Keel* case, supra, 553 P.2d at 153 and pursues an action solely against the uninsured motorist carrier without joining the tort-feasor.

The issue of whether the uninsured motorist claim is reduced by a set-off of benefits from the tort-feasor's liability policy is discussed in the dissent by Justice Opala in *Tidmore v. Fullman,* 646 P.2d 1278 (Okl. 1982) wherein Justice Opala examined the effects of the 1979 amendment of 36 O.S. § 3636:

> ... the claim of a § 3636 insured is no longer reduceable by the limit of the tort-feasor's public liability protection. 36 O.S.1981 § 3636(C) and (E).... Nor may it be diminished by the insurance protection available to the adverse vehicle. The new indemnity of the § 3636 carrier is not partial but total. Whenever the coverage applies, the insured gets it all from the carrier.

The Supreme Court citing § 3636(E) held in *Aetna v. State Board for Property and Casualty Rates,* 637 P.2d 1251 (Okl.1981) that medical payments insurance cannot be set-off against uninsured motorist coverage stating:

> The legislature has indicated by the enactment of § 6092 that medical payment coverage is to be afforded special treatment; that special treatment should also be given in regard to such coverage in uninsured motorist provisions. This same logic applies to set-off, though it specifically is prohibited under 36 O.S. 1971, § 3636.

The Supreme Court further discussed whether a set-off was allowable in *Chambers v. Walker,* 653 P.2d 931 (Okl.1982) holding that mandatory uninsured motorist limits could not be reduced by set-off of workers' compensation benefits received by the claimant:

> Since the intention of the legislature is so clear that payments made by a tort-feasor should not diminish the injured party's recovery under his own policy, it is even more likely that the set-off of benefits recovered from a collateral source would be prohibited. In accord with the rationales above-stated, we hold that the limitation provision is ... void since if given effect it would reduce the amount of coverage available under the uninsured motorist provisions to less than the amount required by statute and hence is violative of the statute. For the same reason we reject the appellee's subsidiary argument that it be allowed a partial set-off insofar as its coverage liability ($10,000) exceeds the 1977 statutory minimum required uninsured motorist coverage ($5,000).

As previously discussed the workers' compensation carrier conversely is not entitled to a set-off against uninsured motorist insurance proceeds. *Bill Hodges Truck Company v. Humphrey,* supra, 704 P.2d at 94. The Supreme Court further stated in *State Farm v. Wendt,* 708 P.2d 581 (Okl. 1985):

> This court has examined with critical scrutiny policy provisions which purport to dilute the legislatively mandated uninsured motorist coverage.... We today reiterate and re-emphasize the viability of our prior decisions, which hold to the principle that once a person is insured under an uninsured motorist policy, sub-

sequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S. § 3636.

Appellant argues that an injured plaintiff, however, must proceed against the tort-feasor before recovery can be had under its own policy. However, the Supreme Court in *Keel v. M.F.A.*, supra, 553 P.2d at 158 has stated that "he may file an action directly against his insurance company without joining the uninsured motorist as a party defendant and litigate all of the issues of liability and damages in that one action."

■■■ The uninsured motorist carrier is entitled to proceed in its own right against the tort-feasor upon payment of damages to a plaintiff. Title 36 O.S.1981 § 3636(E). The right of subrogation, when it exists, is vested in the uninsured motorist carrier and said carrier has the option of whether to proceed against the tort-feasor. The insured is required only to not undertake any active step which would destroy the subrogation rights of the uninsured motorist carrier. *Porter v. MFA*, 643 P.2d 302 (Okl.1982). However, passive destruction of the uninsured motorist carrier's subrogation rights, such as allowing the statute of limitations to run on the tort before filing suit against the tort-feasor, does not negate the uninsured motorist coverage. *Uptegraft v. Home Insurance Company*, supra, 662 P.2d at 681.

■■ We find that 36 O.S.1981 § 3636(E) is clear that the legislature intended that payments made by a tort-feasor should not diminish the injured party's recovery under his own policy and the uninsured motorist insured is not required to sue the tort-feasor before recovery can be had under his own policy. Therefore, we hold that Appellant is not entitled to a credit for the amount of liability coverage held by the tort-feasor, i.e. $10,000. Because the uninsured motorist insured is not required to sue the tort-feasor and can collect solely against the uninsured motorist carrier even after the expiration of the limitations period, Appellant should have the burden of

recovering the tort-feasor's liability insurance through a subrogation action. To require an automatic set-off of the amount of liability coverage held by a tort-feasor would render the subrogation provisions ineffective and would also ignore the plain language of § 3636(E) and the decisions of the Supreme Court discussed above. If the uninsured motorist carrier were allowed to deduct from the injured party's recovery (which damages are in this case equal to the $60,000 judgment rendered by the trial court) a set-off of $10,000, then the insured would not get the underinsured motorist coverage that he paid for. When the statute of limitations on the tort has expired, the injured plaintiff will have his underinsured motorist coverage diluted, for he cannot recover against the tort-feasor.

Appellant cites several cases as authority for its proposition. Appellant cites *Brown v. United Services Auto Association*, 684 P.2d 1195 (Okl.1984) for the proposition that where the identities of both the owner and the driver of a negligently-operated vehicle have been ascertained, "the burden of proving that the other vehicle was uninsured falls upon the insured who is seeking to recover under his uninsured motorist endorsement ..." This statement merely proposes the rule that a plaintiff must bear the burden of proving that the other vehicle was uninsured or underinsured, however, it does not establish the rule that when the other vehicle is in fact insured although underinsured, the injured party must be required first to attempt to collect from the insured tort-feasor. We likewise do not believe that the cases cited by Appellant of *Karlson v. City of Oklahoma City*, supra, 711 P.2d at 72 and *Uptegraft v. Home Insurance Company*, supra, 662 P.2d at 681 support Appellant's position that the only object of the uninsured motorist statutes and the policies stemming therefrom is to protect the insured from the effects of personal injury resulting from an accident where the negligent motorist carries no insurance or is underinsured support Appellant's position. In fact, we believe that these cases hold that there is to be no dilution of benefits per-

taining to uninsured motorist coverage and, therefore, the uninsured motorist carrier must pursue its subrogation rights. Lastly, Appellant cites the Florida case of *Arrieta v. Volkswagen, Inc. Co.*, 343 So.2d 918 (Fla.App.1977). We find this case distinguishable from the instant case as the Florida statute provides that uninsured motorist coverage "shall be excess over but not duplicate ..." other benefits that could be received by the uninsured motorist plaintiff. This language and concept is not present in the Oklahoma statute.

AFFIRMED.

HUNTER, J., concurs.

GARRETT, P.J., dissents.