Gary Leon TORRES, Personal Representative of the Estate of Christopher Wade Torres, Deceased, Appellee,

v.

KANSAS CITY FIRE AND MARINE INSURANCE COMPANY, Appellant.

No. 70973.

Supreme Court of Oklahoma.

March 30, 1993.

David H. Cole and Brian Husted, Edmonds, Cole, Hargrave & Givens, Oklahoma City, for appellee.

James A. Jennings, III, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for appellant.

LAVENDER, Vice Chief Justice.

We decide in this case the trial court was correct in ruling as a matter of law appellee, personal representative of the estate of Christopher Wade Torres (decedent), was entitled to recover under an uninsured/underinsured (UM) endorsement to a policy of insurance issued by appellant, Kansas City Fire and Marine Insurance Company, to decedent's employer. We also decide the trial court was correct in adding prejudgment interest to the jury verdict from the date appellee commenced suit against appellant to the date of verdict pursuant to 12

O.S.1991, § 727(A)(2).[1]

## PART I. FACTS AND PROCEDURAL HISTORY

Decedent, sixteen years old, obtained employment with Mid–America Lumber, Inc. in the summer of 1986. On July 9, 1986, while riding as a passenger in a vehicle owned by his employer and driven by a coemployee, decedent died as a result of a one-car accident. Both parties agree decedent and the coemployee were in the course of their employment at the time and that both (in the case of decedent his beneficiaries) recovered benefits under the Oklahoma Workers' Compensation Act. 85 O.S. 1981, § 1 et seq., as amended. Appellant also admitted the accident was caused by the negligence of the coemployee.

At the time of the accident there was in effect a comprehensive business insurance policy purchased by Mid–America Lumber, Inc. and issued by appellant, which contained an UM endorsement. The limit of UM coverage was $500,000.00. Appellant admits decedent was an insured under the endorsement by reason of his occupancy in the covered vehicle and the definition of insured in the policy.[2] In pertinent part the scope of coverage provided as follows:

> In accordance with Title 36, Oklahoma Statutes, **we** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle.** The damages must result from **bodily injury** sustained by the **insured** caused by the **accident.** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle.** (bolding in original).

Appellee sued appellant to recover under the UM endorsement. The trial court ruled as a matter of law recovery was proper under the UM endorsement and the matter was tried to a jury on the amount of damages. Appellant does not dispute the appellee sought damages normally recoverable in a wrongful death action. The jury returned a verdict against appellant in the amount of $350,000.00. Thereafter, the trial court added prejudgment interest to the verdict from the date appellee's petition was filed against appellant to the date of verdict which amounted to $34,912.64.

On appeal appellant asserted the UM coverage did not apply based on an argument that because the negligent coemployee was immune from liability by virtue of the exclusivity provisions of the workers' compensation laws the insured was not legally entitled to recover damages from the tortfeasor.[3] It stressed the fact decedent was merely a Class 2 insured under the UM endorsement and on this basis sought to distinguish our holding in *Barfield v. Barfield*, 742 P.2d 1107 (Okla.1987), which ruled a premium paying Class 1 insured under his own policy of insurance was entitled to recover UM benefits even though the negligent tortfeasor was a coemployee immune under the workers' compensation laws.[4] Appellant also argued it would have no subrogation rights if recovery was allowed because of the immunity of the coemployee. It finally asserted error in allowing prejudgment interest under § 727(A)(2) because the claim against it was based in contract and the suit was not one by reason of personal injuries subject to the mandate of that provision. The Court of Appeals affirmed and we previously granted certiorari.

---

**1.** Section 727 has remained unchanged since 1986.

**2.** The UM endorsement included among insureds anyone occupying a covered auto.

**3.** 85 O.S.1991, § 12 of the Oklahoma Workers' Compensation Act expressly provides that the liability furnished under that Act is exclusive and in place of all other liability of the employer or any of his employees. The 1991 version of

§ 12 has not been altered since the accident in question occurred in 1986.

**4.** Those commonly denominated Class 1 insureds are the named insured and resident relatives, while Class 2 insureds are usually those individuals insured in the policy only by reason of their occupancy or permissive use of a covered vehicle. *Rogers v. Goad*, 739 P.2d 519, 521 (Okla.1987).

## PART II. UM COVERAGE DOES EXIST FOR THE ACCIDENT IN QUESTION NOTWITHSTANDING THE STATUTORY IMMUNITY OF THE COEMPLOYEE

The phrase legally entitled to recover damages from owners or drivers of an uninsured motor vehicle in the instant insurance policy is derived from the statutory mandate of 36 O.S.1981, § 3636(A) and (B) which provide in pertinent part as follows:

(A) No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section.

(B) The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are *legally entitled to recover damages* from the owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. (emphasis added).

On at least three occasions we have considered the meaning of the phrase. *Barfield v. Barfield, supra; Karlson v. City of Oklahoma City,* 711 P.2d 72 (Okla.1985); *Uptegraft v. Home Insurance Company,* 662 P.2d 681 (Okla.1983). In *Uptegraft,* in holding a suit to recover under an UM endorsement to a policy of insurance was contractual in nature and governed by the five year limitation period for written contracts found at 12 O.S.1981, § 95 (First), we said, "[t]he words 'legally entitled to recover' simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." 662 P.2d at 685. We rejected the view the phrase required an insured to establish all the elements of a viable claim

in tort or that the timely filing of a claim against the tortfeasor within the two year limitation period found at 12 O.S.1981, § 95 (Third) was an indispensable requirement or condition to recovery against the UM carrier. *Uptegraft,* 662 P.2d at 685.

In *Karlson* we again construed the phrase legally entitled to recover damages. Relying on the meaning we had given the words in *Uptegraft,* we held an insured could recover under an UM endorsement amounts in excess of the limits of liability imposed by the Political Subdivisions Tort Claims Act, even though a section of that Act [51 O.S.1981, § 154] placed an upper monetary limit on the amount an injured party could recover against the tortfeasor municipality or its employee. *Karlson,* 711 P.2d at 74–75. We ruled the phrase meant only that the insured be able to establish fault on the part of the uninsured or underinsured motorist which gives rise to damages and the extent of those damages. *Id.* In so ruling we recognized our decision merely employed principles of contract interpretation which were geared toward effectuating the intention of the parties, an intention determined to be that where an insured suffered a loss which was not able to be compensated by the tortfeasor, it was the insurance company that would assume the risk of that loss, not the insured. *Id.*

*Barfield* was the next occasion we had to construe the phrase. There we ruled although the exclusivity provisions of the Oklahoma Workers' Compensation Act precluded recovery against the negligent coemployee tortfeasor, the widow of decedent could recover under the UM endorsement of decedent's own policy of insurance. We again cited *Uptegraft* in concluding the phrase legally entitled to recover damages simply means the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. *Barfield,* 742 P.2d at 1112. We said:

An uninsured motorist carrier does not stand in the tortfeasor's shoes and the conditions for recovery under an uninsured motorist policy can be satisfied even if the insured cannot prove all the

elements of the tort against the uninsured.

*Id.*

We further said in such regard:

The rationale and legal application of *Uptegraft* will permit no other conclusion than reached herein. Another result would be inconsistent. In *Uptegraft* and the case at bar the tortfeasor is at fault and responsible for the injury but protected by statute. We cannot agree that protection afforded a tortfeasor by a statute of limitation is distinguishable from protection afforded a tortfeasor by a statute which grants immunity.

*Barfield,* 742 P.2d at 1112, fn. 1.

■ Appellant seeks to distinguish *Barfield* on the basis that here we are dealing with an insurance policy purchased and paid for by the employer and, thus, the decedent is only a Class 2 insured by virtue of his occupancy of the vehicle, rather than a Class 1 named insured as involved in *Barfield.* Appellant insists in the situation of a Class 2 insured the term legally entitled to recover damages should be given a more restrictive meaning than in *Barfield* such that the insured be required to prove more than fault on the part of the tortfeasor giving rise to damages and the extent of those damages. It argues instead the insured must actually show damages would be recoverable in a direct action against the tortfeasor, something which cannot be shown here because of the immunity provided to the coemployee by the exclusivity of the workers' compensation laws. Appellant also notes we have recognized distinctions between Class 1 and Class 2 insureds in our stacking cases [*See e.g., Babcock v. Adkins,* 695 P.2d 1340 (Okla.1984); *Stanton v. American Mutual Liability Insurance Company,* 747 P.2d 945 (Okla.1987)] and argues a similar distinction should be made here in the treatment of Class 1 and Class 2 insureds. We do not agree.

Assuming for the purposes of this opinion decedent was a Class 2 insured under the UM endorsement[5] and, thus, an insured merely by virtue of his occupancy in a covered vehicle we fail to see how such fact necessitates a different meaning be given to the phrase legally entitled to recover damages than that espoused in *Uptegraft, Karlson* and *Barfield.* The important and overriding determination in our view is whether the party attempting to recover under the UM endorsement is an insured under the policy, a status decedent met here, as admitted by appellant. *Babcock v. Adkins,* 695 P.2d at 1342; *Shepard v. Farmers Insurance Company, Inc.,* 678 P.2d 250, 252 (Okla.1983).

■ As already noted, we recognized in *Karlson, supra* our decisions construing the phrase legally entitled to recover damages have relied on principles of contract interpretation. *Id.,* 711 P.2d at 74–75. Appellant points to no principle of contract interpretation which would call for a different meaning to the phrase merely because the insured here was a Class 2 insured by

---

5. We note appellee makes an argument in his appellate submissions that where the corporation is the named insured, employees should be considered Class 1 insureds because a corporation cannot itself receive bodily injuries. In *Rogers v. Goad, supra,* note 4, we viewed a permissive-user employee of a corporate employer as a Class 2 insured by virtue of his occupancy of a company vehicle. *Rogers* answered the question of whether a permissive-user employee could stack or pyramid uninsured motorist coverage under his employer's automobile fleet insurance policy. In *Stanton v. American Mutual Liability Insurance,* 747 P.2d 945 (Okla.1987), we also determined a permissive-user employee was a Class 2 insured in the context of determining whether said employee could stack the uninsured motorist coverage for all vehicles covered under his employer's business automobile fleet policy. Finally, in *Aetna Casualty and Surety Company v. Craig,* 771 P.2d 212 (Okla.1989), we again appeared to view employees as Class 2 insureds in the context of a stacking question involving a commercial fleet policy. *Id.* at 216. In a dissent in *Craig* Justice Wilson was of the view employees, while acting in the course of their employment, should be viewed as agents of the corporate named insured and as such should be considered Class 1 insureds. *Id.* at 217–219. In that we hold here even a Class 2 insured by virtue of occupancy in a covered automobile is entitled to the benefits of the UM coverage we need not decide whether the decedent would also be entitled to be considered a Class 1 insured under a theory similar to that espoused by Justice Wilson's dissent in *Craig.* For the purposes of this case we assume decedent was only a Class 2 insured by virtue of his occupancy in a covered vehicle.

virtue of occupancy, rather than a Class 1 insured by virtue of being the named insured and we are aware of none. The determining factor is, what was the intention of the parties to the contract? We believe the intention was that UM coverage would be available once it was determined the party seeking coverage was an insured under the policy, that the uninsured tortfeasor causing damages. was at fault and the extent of those damages was shown.

In *Babcock* we ruled that those entitled to uninsured motorist coverage solely by reason of their status as passengers in a covered vehicle may not stack the uninsured motorist coverage under separate policies purchased by the owner of the involved vehicle for a noninvolved vehicle or vehicles unless those passengers also qualified as insureds under those separate policies. *Id.*, 695 P.2d at 1342–1343. We recognized, "[n]either the passenger nor the purchaser of the policy would have any legitimate contractual expectation that one insured solely by reason of his presence in a vehicle would be entitled to a recovery under other policies belonging to the named insured covering vehicles which were not involved in the accident". *Id.* at 1343. In so ruling, however, we recognized that those qualifying as insureds by reason of their status as passengers or permissive users in the covered vehicle would be entitled to recover under the UM endorsement for the vehicle in which they were located when injured by an uninsured motorist. *Id.*

Here, no stacking issue is involved, but instead we have only the issue of whether a person *admittedly* an insured under an UM endorsement is entitled to recover *at all* under the single limit coverage provided in the policy. In such a situation, where only the single limit coverage of the vehicle involved in the accident is in question, the legitimate contractual expectations of the parties, i.e. the passenger as an insured, the purchaser of the policy and the insurance carrier, would be that coverage was provided for those defined as insureds in the policy. To allow recovery in such a situation is merely giving effect to the intention of the parties who contemplated a situation where an insured would not be able to recover for his injuries from the tortfeasor. Just as in *Karlson, supra,* the intention of the parties was that appellant, not the insured, would assume the risk that the insured might suffer a loss for which the tortfeasor could not make compensation. Accordingly, we expressly hold even where the insured is a Class 2 insured by virtue of his occupancy in a covered vehicle the phrase legally entitled to recover damages means only that such insured be required to show fault on the part of the uninsured motorist which gives rise to damages and the extent of those damages.[6]

We likewise do not believe the fact decedent did not pay the premiums on the instant coverage should bar recovery. In our view, focusing on who paid the premium is in essence the same argument cast in a little different light than focusing on the status of the insured as Class 1 or Class 2 for the reason most, if not all, Class 2 insureds will have paid no premium. In *Heavner v. Farmers Insurance Company,* 663 P.2d 730 (Okla.1983), we specifically rejected the view that an insured under an UM endorsement by virtue of his being a passenger in a vehicle driven by the named insured in the policy at issue should be precluded from receiving UM benefits

---

**6.** Appellant also argues that to allow recovery here would thwart the exclusivity provisions of our workers' compensation laws because it is allowing an indirect recovery against the employer, the entity that purchased the UM coverage. We do not find this argument persuasive for the reasons the employer *did* pay for the coverage (an advance premium in the amount of $32,782 was charged for the entire comprehensive business policy at issue here) and we find nothing in either our workers' compensation laws or our laws regarding uninsured motorist coverage which would preclude an employer from providing additional benefits to its employees that may not be mandated by either of those statutory schemes. We do not have here any issue of whether an employer's commercial fleet policy containing an UM endorsement could be written so as define the term insured to totally exclude the employer's employees or to exclude employees in certain situations from the definition of insured. Such an issue is not before us and we express no opinion on it.

merely because he had paid no premium for the coverage. *Id.* at 731–732.

■ Appellant also asserts that if recovery is allowed in this case it will have no subrogation rights against the negligent coemployee tortfeasor because of the immunity afforded by the workers' compensation laws, rights it says we have recognized are subject to protection. Appellant misreads our cases.

Reliance is placed on *Porter v. MFA Mutual Insurance Company*, 643 P.2d 302 (Okla.1982), where we held the insured's affirmative act(s) of settlement and release of the tortfeasor which destroyed the insurance carrier's subrogation claims discharged the carrier's liability under the UM coverage. We, however, made clear in *Uptegraft, supra* that it was only where the insured engaged in some affirmative act or prejudicial conduct which destroyed the subrogation rights of the insurance carrier that the carrier's liability under the UM endorsement would be discharged. We said:

Where there is an absence of some affirmative acts or prejudicial conduct by the insured which may operate to destroy the insurer's subrogation rights, mere failure of the insured to commence an action against the uninsured tortfeasor within the two-year period of limitations will not afford a basis for invoking the *Porter* doctrine to effect a discharge of the insurer's liability.

*Uptegraft*, 662 P.2d at 686–687.

No affirmative acts or prejudicial conduct on the part of the insured tending to destroy appellant's subrogation rights is involved here. The immunity of the workers' compensation laws which would bar any subrogation rights is not the result of any conduct on the part of the insured and

affords no basis to deny recovery on the basis of the *Porter* doctrine.

## PART III. PREJUDGMENT INTEREST

The trial court in rendering judgment added prejudgment interest to the verdict of the jury from the date appellee's petition was filed against appellant to the date of verdict. 12 O.S.1991, § 727(A)(2) provides in pertinent part as follows:

When a verdict for damages by reason of personal injuries ... is accepted by the trial court, the court in rendering judgment shall add interest on said verdict at a rate prescribed pursuant to subsection B of this section from the date the suit was commenced to the date of verdict....

■ Appellant argues § 727(A)(2) is inapplicable to the instant suit because it is based on a contract of insurance and is not a suit for damages by reason of personal injuries. We believe appellant is incorrect.[7]

Appellant does not dispute that in a suit directly against a tortfeasor brought to recover damages for personal injuries caused by an automobile accident it would be appropriate for the trial court to add prejudgment interest under § 727(A)(2) to a jury verdict adverse to the tortfeasor. The express language of the provision would mandate applicability in such a situation as in others where recovery is sought for personal injury. *See e.g. Fleming v. Baptist General Convention*, 742 P.2d 1087, 1090 and 1096 (Okla.1987) (prejudgment interest recoverable against tortfeasor in action to recover for negligent medical attention). There is further no doubt a suit to recover for wrongful death is one to recover damages for personal injuries and it is appropriate to award prejudgment interest under § 727 in such proceedings. *Holland v. Dolese Co.*, 643 P.2d 317, 324 (Okla.1982);

---

7. We note appellee argues in his response to appellant's petition for certiorari the prejudgment interest issue is not properly before us because the issue was not raised in the petition for rehearing filed with the Court of Appeals. We disagree. Although the issue was not raised in the petition for rehearing filed with the Court of Appeals that fact is not fatal to its consideration on certiorari. *Cf. Special Indemnity Fund*

*v. Washburn*, 722 P.2d 1204, 1210–11 (Okla.1986) (timely filing of petition for rehearing under then pertinent rules was not a jurisdictional prerequisite to entertaining petition for certiorari). The issue was raised in the initial petition in error filed by appellant, it was briefed by appellant and it was raised in the petition for certiorari. It has, thus, been properly preserved for our review at this time.

**414**

*See also Cartwright v. Atlas Chemical Industries,* 593 P.2d 104, 120–122 (Okla.Ct.App., Div. 1, 1978). In our view, although it is true the reason appellant is liable to pay monetary relief here at all is based on its contractually based duty to pay under the UM endorsement of the policy, the damages it is required to pay under that policy are unquestionably by reason of personal injuries.

Although the prejudgment interest under § 727(A)(2) is not an element of damages submitted to the jury for their consideration, it is a legislatively mandated monetary recovery in cases brought to recover for personal injuries. *Fleming v. Baptist General Convention, supra,* 742 P.2d at 1096.[8] UM coverage is itself nothing less than coverage to provide monetary relief for bodily injury or death (i.e. by reason of personal injuries) to the extent the tortfeasor who is uninsured or underinsured or who may be unknown in the case of a hit and run accident, is not in a position to pay the damages due the victim. 36 O.S.1981, § 3636. UM coverage merely provides a source of recovery for personal injuries when an innocent victim cannot otherwise recover from the tortfeasor. We believe, in that the tortfeasor would be liable for prejudgment interest the UM carrier is likewise liable therefore and a suit to recover for bodily injury or death against a UM carrier is one intended to be covered by § 727(A)(2) because such a suit is in essence nothing other than a suit to recover for personal injuries.[9]

Accordingly, for the reasons stated herein the opinion of the Court of Appeals is **VACATED** and **WITHDRAWN FROM PUBLICATION** and the judgment of the trial court is **AFFIRMED.**

HODGES, C.J., and SIMMS, ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., concur in part 2; dissent from part 3.

HARGRAVE, J., disqualified.

OPALA, Justice, dissenting in part.

I dissent from Part II for the reasons articulated in *Barfield v. Barfield,* Okl., 742 P.2d 1107, 1113 (1987) (Opala, J., dissenting), and *Karlson v. City of Oklahoma City,* Okl., 711 P.2d 72, 75–76 (1985) (Opala, J., dissenting). I concur in result in Part III.

---

8. The purposes behind a provision like § 727(A)(2) include compensating the plaintiff for the loss of use of his money from the time suit has been commenced to the date of judgment and to foster settlement of meritorious claims and stand as an attempt to relieve congestion in the court system. *Fleming v. Baptist General Convention,* 742 P.2d 1087, 1096 (Okla.1987).

9. In *Mellenberger v. Sweeney,* 800 P.2d 747 (Okla.Ct.App. Div. 3, 1990), the Court of Appeals held a UM carrier was liable for prejudgment interest under § 727. We note we do not necessarily endorse any part of *Mellenberger* except that court's correct recognition a UM carrier may be liable for prejudgment interest under § 727.