Rhonda Lynn CARLOS, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurer, Appellee.

No. 87,136.

Court of Appeals of Oklahoma, Division 4.

Sept. 24, 1996.

Rehearing Denied March 4, 1997.

Everett R. Bennett, Jr., Frasier, Frasier & Hickman, Tulsa, for Appellant.

Neil D. Van Dalsem, Jeffrey L. Wilson, Knowles, King & Taylor, Tulsa, for Appellee.

## MEMORANDUM OPINION

TAYLOR, Presiding Justice.

Plaintiff, Rhonda Lynn Carlos, appeals from an adverse order of the trial court sustaining a motion for summary judgment in favor of Defendant, State Farm Mutual Automobile Insurance Company, in this action for uninsured/underinsured motorist (UM) coverage under Plaintiff's insurance policy with Defendant. The appeal is brought under the accelerated procedures of Civil Appellate Procedure Rule 1.203(A), 12 O.S.Supp.1995, ch. 15, app. 2. We affirm.

The essential facts are not in dispute. On October 1, 1992, Plaintiff was injured when her car was involved in an accident with an Oklahoma Department of Transportation (ODOT) truck driven by an ODOT employee. The parties have stipulated that Plaintiff's claim in this case, inclusive of all costs and associated fees, is less than $100,000. Pursuant to the Governmental Tort Claims Act, 51 O.S.1991 §§ 151 through 200 (GTCA), Plaintiff timely filed a claim with ODOT. On March 18, 1993, ODOT denied the claim. Plaintiff did not file an action against the state within 180 days after the denial of her claim, as required by GTCA to maintain a negligence action against the state. In September 1993, however, Plaintiff filed an action against Defendant, with whom Plaintiff had a policy providing $25,000 in UM coverage. Plaintiff asserted ODOT was an uninsured/underinsured motorist, that Plaintiff's personal injury damages exceeded $25,000, and that Plaintiff was entitled to judgment against Defendant for the policy limits.

Defendant moved for summary judgment, claiming its UM exposure was limited to only the amount of Plaintiff's claim exceeding $100,000, which is ODOT's upper limit of liability under the GTCA, 51 O.S.1991 and Supp.1995 § 154.[1] Defendant also asserted UM coverage did not apply because ODOT should be treated as having insurance within the meaning of state law. In support of the latter argument, Defendant attached, as an exhibit to its summary judgment reply brief,

---

1. Amendments to section 154(A)(2) in 1994 did not affect the liability limits applicable to this case.

a copy of an ODOT letter stating ODOT is "self-insured" for vehicle and tort liability under a risk management program established pursuant to 74 O.S.1991 § 85.34, and that the program administers a fund from which tort claims against ODOT are paid. According to the ODOT letter, the fund contains sufficient funds to satisfy ODOT's liability limits under section 154 of the GTCA.

In response, Plaintiff asserted that under the holdings of *Uptegraft v. Home Insurance Co.,* 662 P.2d 681 (Okla.1983), and *Roberts v. Mid–Continent Casualty Co.,* 790 P.2d 1121 (Okla.Ct.App.1989), Plaintiff was entitled to proceeds from her UM coverage regardless of whether she first sued ODOT. Plaintiff also argued that Defendant had not sustained its "burden" of showing that ODOT was in fact insured.

■ We note, first, that Plaintiff bears the burden of showing ODOT was uninsured, and of showing the conditions effectuating UM coverage are present. *Brown v. United Serv. Auto. Ass'n.,* 684 P.2d 1195 (Okla.1984). As to Plaintiff's argument that she was not required to first file an action against ODOT, we agree that *Uptegraft* and *Roberts* each held that under the facts presented in those cases an insured did not need to first sue an uninsured tortfeasor prior to seeking UM benefits. *Uptegraft,* 662 P.2d at 687; *Roberts,* 790 P.2d at 1124. *Uptegraft,* however, is distinguishable in that it involved a private tortfeasor who had no insurance coverage whatsoever. *Roberts* also is distinguishable, because the injured plaintiff's claim in that case clearly exceeded the limits of the tortfeasor's liability insurance.

Moreover, since *Uptegraft* was issued in 1983, both the supreme court and this court have addressed UM coverage in a number of other decisions, further defining the rights of insurers and insureds under 36 O.S.1991 § 3636. Of significance to this case are *Buzzard v. Farmers Insurance Co., Inc.,* 824

P.2d 1105 (Okla.1991), *Karlson v. City of Oklahoma City,* 711 P.2d 72 (Okla.1985), and *Boyer v. Oklahoma Farm Bureau Mutual Insurance Co.,* 902 P.2d 83 (Okla.Ct.App. 1995). Each involved interpretation of the phrase "legally entitled to recover from owners or operators of uninsured motor vehicles" in section 3636(B),[2] together with the definition, in section 3636(C), of "uninsured motorist" as including *underinsured* motorists.[3] The determinative issue here also involves these issues.

■ In *Karlson,* the court addressed whether an insured claimant, "in a negligence action against [the state or a political subdivision], is 'legally entitled to recover' damages in excess of the limits of liability imposed by the [GTCA]" under the claimant's UM policy. 711 P.2d at 73. The court held that the claimant, *whose alleged damages exceeded the liability limits imposed by the GTCA,* was entitled to recover against his UM carrier for the excess amounts:

In summary, we hold that in a situation where the liability of a tortfeasor is limited by the Political Subdivisions Tort Claims Act, *to an amount which will not compensate an insured for all his proven losses* suffered in an automobile accident, that insured may recover from his insurer through the uninsured/underinsured motorist provisions of his automobile liability insurance....

*Id.* at 75 (emphasis added). Although not specifically addressing whether the state/political subdivision was considered "uninsured" within section 3636 if the entity did not carry separate liability insurance, the general tenor of *Karlson* is that waiver of sovereign immunity, up to the liability limits imposed by title 51, is the functional equivalent of insurance to that amount. This interpretation is supported by the court's explanation of *Karlson*

2. Section 3636(B) specifies that UM coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease...."

3. In relevant part, 36 O.S.1991 § 3636(C) states:

For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other.

in *Torres v. Kansas City Fire & Marine Insurance Co.,* 849 P.2d 407, 410 (Okla.1993):

In *Karlson* we again construed the phrase legally entitled to recover damages. Relying on the meaning we had given the words in *Uptegraft,* we held an insured could recover under an UM endorsement amounts in excess of the limits of liability imposed by the Political Subdivisions Tort Claims Act, even though a section of that Act [51 O.S.1981, § 154] placed an upper monetary limit on the amount an injured party could recover against the tortfeasor municipality or its employee. *Karlson,* 711 P.2d at 74–75.

In *Buzzard,* the Oklahoma Supreme Court addressed at length the coverage afforded by section 3636 when a tortfeasor is insured in an amount insufficient to satisfy the insured's claim. Holding that section 3636(C) makes exhaustion of the tortfeasor's liability limits a prerequisite to effectuating UM benefits, the court stated:

Our statute makes it clear that the UM insurer is responsible only for the amount of the claim which exceeds that available from the liability carrier....

If the claim exceeds the amount available under the liability policy, the underinsurer must take prompt action to determine what payment is due and may not delay the payment of benefits until exhaustion of liability limits.... [I]f the insurer determines that the claim does not exceed liability limits, and such valuation is supported by reasonable evidence, the underinsurer may delay payment. However, if the underinsurer does not conduct an investigation, or after investigation, determines that the likely worth of the claim exceeds the liability limits, prompt payment must be offered.... [Here, t]he parties do not contest the fact that the claim exceeded the amount of liability coverage. Where, as here, the claim greatly exceeds the available liability coverage, we find no reason to require that payment be delayed while awaiting payment by the liability carrier.

*Id.* at 1111–12. Under *Buzzard,* if there is no reasonable expectation that the tortfeasor's liability limits will be exhausted, then no obligation arises for the UM carrier to pay benefits under the insured's policy.

Finally, in *Boyer,* this court addressed the issue of whether UM benefits were available to a plaintiff who allowed the applicable statute of limitations to expire against an insured tortfeasor whose policy limits exceeded the amount of the plaintiff's claim. We affirmed the trial court's denial of coverage. 902 P.2d at 87.

▪ Similarly, in the case at bar, Plaintiff's claim is less than the statutorily defined liability limits of the tortfeasor, ODOT, against whom a right of action no longer exists. As such, under *Karlson, Buzzard,* and *Boyer,* Plaintiff's UM coverage is unavailable. We therefore hold that, when the tortfeasor is the state or a political subdivision whose sovereign immunity has been waived to the extent of the liability limits imposed by 51 O.S.1991 § 154, and the insured allows his claim under GTCA to expire, if the claim indisputedly is less than the liability limits of section 154, then no obligation to pay UM benefits arises pursuant to 36 O.S.1991 & Supp.1995 § 3636.

Accordingly, the decision of the trial court granting Defendant's summary judgment motion, and denying Plaintiff's claim for UM coverage, was correct.

AFFIRMED.

RAPP, C.J., and REIF, J., concur.